21-1299 North Dakota. United States v. Terrell Armstrong. Mr. Cotter. Good morning. Good morning. May it please the court. My name is Patrick Cotter. I represent the appellant in this matter, Terrell Jason Armstrong. The appellant is before the court asking the court to find that there were two particular errors in the admission of evidence at the district court level that this matter should be remanded and that the cumulative effect of those errors warrant new trial. I will start with the issue regarding a custodial statement that was taken from my client at his residence in the early morning hours. I will acknowledge first that the general rule is that not all questions asked of an individual who is in a custodial situation arise to questions that require a Miranda warning before the questions are asked. First at the outset, I would note that there was no dispute in any of the briefing and in the factual findings that Mr. Armstrong, the appellant, was in custody or in a custodial situation at the time that he was questioned after the execution of a search warrant at his home. The factors that he was in custody, detained, handcuffed, he had been patted down, he was questioned closely within his home, all are consistent with the Martinez case and I don't think that there's any dispute that's been noted regarding his custodial status. The issue specifically is the exception that is also noted with regard to identification, basic identification questions. So as I noted at the outset, basic identification questions typically do not require a Miranda warning as noted in McLaughlin and even questions that later could become incriminating under the Brown case that was cited do not arise to the level of the need for suppression. But I submit to this court on behalf of the appellant that this is the specific case where the exception applies. That exception is when the interrogation, unless the government agent should reasonably be aware that the information sought is directly relevant to the substantive offense charged, that's the exception when it comes to basic identification questions. And in this particular case, the specific facts that were erroneously decided or were not fully appreciated by the district court was that the questioning regarding Mr. Armstrong's employment were directly relevant to the substantive offense charged in the fatality and were significant in the trial in this case. And here's the reasons. In this case, the allegation and evidence that was presented was that the appellant was the money man. Essentially that he was in Minnesota, the drugs were being distributed to North Dakota, and essentially he was receiving cash proceeds back from the sale of controlled substance in the state of North Dakota. The agent who had been engaged in this investigation knew this information, and when he got that search warrant, as he lays out in his affidavit, and ultimately upon arriving and executing the search warrant, they find a safe with $66,000 worth of cash. So the information known was that Mr. Armstrong is involved in the sale, that he's the money man, that essentially money's being brought back from the sale of drugs, and then the agent finds a safe in his home during the execution of the warrant that has $66,000 in cash. This is all directly relevant to a essentially drug conspiracy where there's a sale of controlled substance in exchange for United States currency. And at the time that the agent court right, he asked basic questions about his name and identification, his address, where they were. That is all typical basic identification information that did not require the Miranda warning. But the specific question about employment went directly to what they had just found is $66,000 worth of cash in a safe when they had information that it was Mr. Armstrong that was receiving United States currency. Counsel, what employment answer would have been incriminating? Well, in this particular instance, it's the idea that he has to establish what employment he had in order to have that kind of cash at his house. And so that's why it was specific the type of interrogation type of question where either you have an explanation for why you have this because you have a job that would justify this cash, or you don't have an explanation, or the explanation that you give doesn't check out. Those are the very types of questions that are incriminating in nature and that are not basic background questions about name and identification as it pertains to the specific facts in this case. I don't think that an employment question, and in some of the cases noted, you know, for example, if we're just getting this information for purposes of a future bail argument by a pretrial services officer, that's very different than this situation where we have an agent of the government asking specific questions after finding some specific evidence that directly relate to one another. Those are different than a pretrial services officer just getting background information for purposes of doing a bail report. And so in this particular instance, and the reason why it is a significant piece of evidence, is it was brought out in the trial. Essentially, the connector in this case between Mr. Armstrong was that he was having cash transported back from North Dakota to Minnesota from the sale of drugs in North Dakota. And then it was brought out in the testimony regarding what his employment status was, that the employment he identified didn't check out to be a legitimate business, and thereby, of course, implying that this cash that he had in his house was in fact, the only other explanation for it would be that it was illegal, ill-gotten proceeds from the sale of controlled substances. So it was very material. Let me ask you this, Mr. Cotter, on materiality, even without the statement, couldn't the government have showed that he wasn't employed? Whether he had claimed to be at Top Dog Auto or not, wouldn't they have been able to show that he wasn't there or anywhere else? I don't know that they would. They didn't have any other evidence to verify what his employment was or wasn't. So my answer would be, no, I don't know that they would be able to verify his employment or not. So they didn't put on any other evidence about his legitimate income, tax returns, or anything like that? No, not to my recollection. There was no other evidence submitted about his other sources of income that would come from non-illegal activity. So in total, the reason why I bring up how it's tethered together, the idea that this particular question was particularized to this $66,000 in cash, which was then tethered to the testimony at trial as to the money coming back from North Dakota, and it was a critical piece of evidence for the state, and not just immaterial or passing evidence. And this was evidence that was obtained not by way of just a basic background information question, as I've already noted. And I would submit that it's not harmless error because it's not harmless beyond a reasonable doubt in this particular instance because it was a critical aspect of the state's case to show the transfer of cash from the state of North Dakota to Mr. Armstrong, tethering it directly to him, found in his home, and that there wasn't any other evidence to support that. And therefore, it's not harmless beyond a reasonable doubt. It was a critical piece of evidence in this trial that, but for the Miranda violation, because this was not a background question, that evidence may not have been presented in the same way. Counsel, without looking forward to how the case was presented by the government and the government's theory of the case, do you think it's fair to say that the questioner, the law enforcement questioner, should reasonably have been aware that the information, this basic identification information, would be directly relevant to the substantive offense charged? Isn't that somewhat of a step too far in charging the officer with a little too much responsibility here? Your Honor, I would respectfully say no. Obviously, that's the point of interpretation here. But I believe that this is the unique set of facts where, again, in many, many cases, the question about someone's place of employment would fall under basic background questions that do not require a Miranda warning. I submit to this court that this was the specific type of factual circumstance where this particular exception of the directly relevant to the substantive offense charged. And your question is, the government agent should reasonably be aware. It doesn't say should be aware. It said should reasonably. And I would point to that word reasonably, because in this particular instance, to answer your question, I believe that Officer Courtright should reasonably have been aware that that question would elicit a potentially incriminating response. So I'd point to that word. I see that I'm already coming up to my rebuttal time, and I was going to move on to the next area, which is the 404B2 evidence argument. In this particular case, the two areas that I specifically would address is the sufficiency of that evidence and the unfair prejudice. In this particular instance, the argument is that there was a threat made, and there's a number of cases cited by the government where threats of violence to witnesses or cooperators is direct evidence and therefore not 404B evidence. And I guess, I don't know if the court wants me to continue. I'm already within my rebuttal time. So I would reserve my remaining time. I'll ask, why aren't both of these intrinsic evidence or res gestae, as some call it? Intrinsic evidence, first of all, I guess my first answer to that question is res gestae would specifically, I think the case says it's so blended or connected with one that's on trial that one incident essentially proves the other. This particular fact, as noted, doesn't rise to that level of intrinsically blended together to... Here it's evidence the conspiracy existed and how it operated. Well, I guess... And the second one is how it got started. And I appreciate and acknowledge your question, Your Honor. I would note that one of the issues is the, I guess, given my time, even if the court were to make the determination, this is not 404B evidence. Based upon the limited information that was provided and in the facts, it was still highly prejudicial because there was now all of a sudden this kind of inference of a home invasion where there's very little information about these... You can keep going or you can try and save a minute for rebuttal. Well, I'll just say... You answered my question. I'll save the remainder of my time. Thank you, Your Honor. Very good. Ms. Dietz? Good morning. May it please the court, my name is Dawn Dietz, representing the United States of America. I'm the prosecuting attorney on this case. There are the basic two issues before the court with regard to admission of evidence, as pointed out by Mr. Cotter. The first having to do with the Miranda and the biographical information. The second issue having to do with the abuse of discretion and the admission of evidence. I'd first like to start with the Miranda issue, that being with the biographical information. As this court is well aware, routine biographical information is an exception to the Miranda. That's been found under the Brown case as well as McLaughlin. McLaughlin specifically stated that address, phone number, marital status, employment, and home address are basic information not requiring the Miranda warnings. And that's exactly what was elicited here. As the court can hear from the recording, which was submitted as an exhibit at the suppression hearing, which is document 188... And also you argued at length it was harmless error. Why did you put it in? I don't know if you tried the case or not. If you didn't need the statements, why did you give us this rather tricky issue on appeal? I am the prosecutor who tried the case, Your Honor. And I believe that the information was relevant to show the jury the overall conspiracy. I do believe, though, that it would be harmless under the Jackson case as there was significant overwhelming evidence with regard to this case. It sounded pretty harmful or incriminating the way opposing counsel explained it this morning. Well, Your Honor, what wasn't relayed in the arguments from opposing counsel was that when law enforcement spoke with Mr. Armstrong with regard to this case, they went into the residence to execute the search warrant, began by conducting interviews. It wasn't until after speaking with Mr. Armstrong. As you can hear from document 188-3, it's very short. Officer Courtright asks Mr. Armstrong the biographical information, begins to read Miranda, and Mr. Armstrong immediately invokes Miranda, and it's terminated. The interview is terminated. Officer Courtright doesn't go any further. Additionally, as the record establishes, there were two different identities. Hold on a second. I'm not sure you really answered the question about whether this is prejudicial. As I understand it, the evidence that came in the trial basically showed that the defendant gave a false claim of legitimate income, ownership of an auto dealership that didn't exist. That's correct, Your Honor. You put that in because you thought it would help show that the money was from illegitimate sources. Correct, Your Honor. At the time in which Officer Courtright was eliciting this information, he doesn't have to know that the intended response is going to elicit an incriminating response, and I believe that's outlined pretty well with regard to the Brown Court. Furthermore, I think it's also outlined further in the Tapia-Rodriguez Court, which is an opinion written by Judge Logan, where it was found that asking an individual which room was theirs was not what fell within the realm of outside of the scope of Miranda, biographical information that doesn't trigger the need for a Miranda warning. So surely asking someone which room belongs to theirs, where law enforcement could potentially find incriminating information, would be more harmful than asking an individual where they're employed, especially in an instance such as the one- It all depends on the case. I mean, it all depends on the context of the case, and here the fact that he gave a bogus explanation for income could be viewed as more harmful than what room he lived in. What was the reason given by the officer for inquiring about employment? Your Honor, the reason for inquiring was routine biographical information. Again, I believe that's thoroughly demonstrated by the recording in and of itself. Listening to the recording, again, the officer asks the routine biographical information. Name, date of birth, where you live, where you're employed. The officer then reads Miranda, Mr. Armstrong invokes Miranda, and the recording is ceased. Well, let me rephrase the question. Why is the question about employment part of the routine biographical information that's requested? Your Honor, it's pertinent to, in case there's additional follow-up that needs to be done with regard to making contact with that particular individual, and to verify that you're actually speaking to the right person that you're intending to speak with. At this particular scene, Mr. Armstrong had two separate identification cards that were found by law enforcement. One had a different name. So part of what law enforcement is attempting to ascertain in obtaining that biographical information is figuring out who exactly they're dealing with, especially in a situation where there are multiple identification cards. And as demonstrated by the record, it's also evident that thereafter, Mr. Armstrong was, in fact, arrested and taken to jail and processed for purposes of charges for those within the state of Minnesota through Dakota County. Your Honor, furthermore, it's also pertinent to point out that, based upon the district court's findings, the district... Yes, Your Honor. Question, just to follow up. At the time that the appellate was questioned, these few questions by the officer, had the money been found? I don't believe it had, Your Honor. My understanding is that law enforcement immediately freezed the scene, apprehended the individuals on scene to clear the scene, initiated interviews, and then continued the search. So there were obviously multiple officers that were there, but the money had not been found until towards the tail end of the search warrant, is my understanding. Thank you. Yes, Your Honor. With regard to the Miranda issue, overall, I believe that it's harmless error under U.S. v. Jackson, as there was a significant amount of evidence that was presented at trial. There were seven cooperators who testified, and there were 200 exhibits that were submitted at trial. Of those exhibits included a pen-registered trap and brace, as well as multiple cell phone forensic analysis. As was demonstrated by that cell phone forensic analysis and the pen-registered trap and trace, it put Mr. Armstrong in Bismarck, North Dakota at the same time in which law enforcement made contact that same evening with two of his co-conspirators, that being Denae Mansell and Deandra Kite. One of those two individuals, Deandra Kite, testified at length about him getting into the same vehicle with Mr. Armstrong with a load of methamphetamine and heroin in the vehicle, driving to Bismarck, North Dakota, that Mr. Armstrong then turned around after obtaining U.S. currency drug proceeds and returned to the state of Minnesota on a train. Furthermore, I think it's important to point out that the district court at the sentencing hearing found that the amount of evidence that was submitted at trial to be overwhelming, and that can be found at the sentencing transcript, page 66. Turning to the admission of evidence issue, if there are no other questions on the Miranda issue, the admission of evidence is abuse of discretion, standard of review. As the government argues in its brief, we believe the two issues, that being the 2018 robbery shooting incident, for lack of a better term, and the other being the traffic stop with Agnes Red Dog, we believe fall squarely within the course of the conspiracy as outlined in Kinshaw, Johnson, and other courts. Specifically looking at the incident regarding the robbery, it happened in 2018, and it falls squarely within the scope of the indictment of the course of the conspiracy. As the testimony was elicited at trial, it was clear that the sole purpose of going over to the residence was for purposes of making the turf known. And I believe that is also outlined in the Dierling Court, in which it was found that drug dealing is a violent act, and it demonstrates the length that conspirators will go in order to protect the furtherance of the conspiracy. Additional courts have found that witness intimidation is probative and admissible, including the Skarda Court, Castleman, Zierke, and D'Angelo. Turning the focus to the Agnes Red Dog traffic stop, while this is before the charged amount of time in the indictment, it shows the participation and relevance of the course of the conspiracy. As Ms. Red Dog testified at trial, she outlined how she first met Mr. Armstrong, but it was at that time in which she was driving from Bismarck towards Fargo, North Dakota, that she was stopped in the area of Jamestown, North Dakota, that she had methamphetamine on her person, which was provided to her by Mr. Armstrong. Ms. Red Dog further testified that she was arrested, went to prison, that upon her release from prison, she made contact with Mr. Armstrong, and shortly thereafter, the conspiracy was up and running again. Ms. Red Dog and Mr. Armstrong would begin communications about Mr. Armstrong bringing controlled substances to North Dakota for purposes of further distribution by Ms. Red Dog, who would at some point recruit others. So with regard to those two particular issues, we believe it's pretty clear that both of those fall within the course of the conspiracy, and do not fall within the scope of 404-B. Additionally, we would find that even if the admission of those particular points of evidence were prejudicial, it is harmless, as the amount of evidence as previously outlined to the court is quite overwhelming and was further stated by the district court during the sentencing. If there are no further questions with regard to the admission of evidence, the last issue is the substantively reasonableness of the sentence. And I realize Mr. Cotter didn't speak much with regard to this as he ran out of time, but I believe the case on point with regard to the substantive reasonableness of the sentence falls squarely within the base court. Concerning the reasonableness of the sentence, it's quite clear that based upon the case law, that it's not comparison between the various co-conspirators, which was part of the argument that was made at the sentencing hearing. And something that was countered by the district court as well, is indicating that's the benefit of negotiating and pleading your case rather than going to trial. And specifically, under the U.S. v. Roos court, the district court is under no obligation to treat co-conspirators the same, even if the conduct is similar. In the base court, Judge Loken wrote that it's nearly inconceivable the court abused its discretion and not varying downwards still further when an individual is not similarly situated for an individual who proceeded to trial rather than an individual who pled guilty. If there are no further questions, the government rests on its brief and asks the court to affirm the judgment of the district court. Thank you. Thank you, counsel. I said I'd give you a minute, as I recall. Mr. Cotter, you've got it. Thank you. I have one minute. I will pick up where I left off. First, I'll just briefly address. I don't have the specific transcript of detective court rates testimony in front of me. I wish I did. I believe that they were aware or were simultaneously finding the cash at the time that these questions were made. So I respectfully disagree with Ms. Dietz, although I also acknowledge I don't have the record to cite to in front of me. As it pertains to the 404B, I would just, first of all, distinguish Johnson and Kinshaw. One dealt with controlled buys. Another dealt with drug notes. In this particular instance, and then the Castleman deals with threats that deal with threats to witnesses or cooperators. In this case, these people that they went to are phantoms, and we don't really know much anything about them or their relation to or relevance to this particular drug conspiracy. In fact, all we had was a witness, and I'm out of time, so I'm just going to ask that the court find that there was a Miranda violation and that that alone was not harmless and to remand this case to the district court. Thank you very much. Thank you, counsel. The case was well briefed and very well argued, and we'll take it under time.